UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HECTOR MONTANEZ,<br><br>    Petitioner,<br><br>    v.<br><br>LISA MITCHELL and MARTHA COAKLEY,<br><br>    Respondents. | Civil Action No.<br>12-11882-FDS |

MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus by a person in state custody. Petitioner Hector Montanez was convicted of unarmed burglary in the night time and possession of burglarious instruments on March 22, 2007. He now seeks habeas relief pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition will be denied.

**I.   Background**

    **A.   State Court Proceedings**

On September 11, 2007, Hector Montanez was convicted following a jury trial in Hampden County Superior Court of unarmed burglary in the night time and possession of burglarious instruments, both in violation of Massachusetts law. The alleged victim and sole eyewitness was Nick Nichols, an elderly homeowner. Nichols testified that, with a gun, he confronted the burglar in his house. The burglar then left. Nichols called 911 and described the burglar's appearance. He identified Montanez as the burglar at a "show-up" shortly thereafter. Montanez was sentenced to consecutive terms of imprisonment for four to six years and

probation for five years, respectively.

On February 10, 2010, Montanez filed post-trial motions for a new trial and for post-conviction discovery, which the trial court denied on August 24, 2010.

Montanez appealed his convictions and the denial of his motion for a new trial to the Massachusetts Appeals Court. The principal issues arose out of the prosecution's failure to produce the 911 tape in discovery. The appeal raised nine grounds, including, among other things, (1) whether the 911 tape that included the eyewitness's call contained exculpatory evidence under *Brady*; (2) whether the judge erred in denying a new trial based on non-disclosure of the 911 tape; (3) whether sanctions should be imposed on the prosecution for failure to turn over the 911 tape prior to trial; and (4) whether the trial court improperly denied cross-examination of the eyewitness as to bias in violation of the Sixth Amendment and Massachusetts Declaration of Rights.

On December 13, 2011, the Massachusetts Appeals Court affirmed the convictions. *Commonwealth v. Montanez*, 81 Mass. App. Ct. 1103 (2011) (unpublished). Montanez filed an application for leave to obtain further appellate review ("ALOFAR"), which the Massachusetts Supreme Judicial Court denied without comment on February 3, 2012. *Commonwealth v. Montanez*, 461 Mass. 1107 (2012).

### B. Federal Court Proceedings

On October 9, 2012, Montanez filed the present petition for habeas corpus.[1] As the basis for relief, the petition asserted the following two grounds:

1. Whether the trial court's ruling denying all cross-examination of the eyewitness as to bias violated petitioner's Sixth Amendment right to confrontation.

---

[1] Montanez also moved for an evidentiary hearing as to the second ground, which this Court denied because he did not satisfy the statutory requirements set forth in 28 U.S.C. § 2254.

    2.    Whether the prosecution's failure to turn over a police tape that included the witness's 911 call violated *Brady* and denied him a fair trial.[2]

## II. Standard of Review

Federal habeas review of a claim previously adjudicated on the merits by the state courts is both limited and highly deferential. *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 780 (2011); *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). If the state court did not decide a claim on the merits, review by a federal court is *de novo*. *Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010). But if the state court adjudicated a claim on the merits, then a federal court may not grant a petition unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner bears the burden of showing that the state court decision was contrary to or involved an unreasonable application of clearly established law. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Woodford*, 537 U.S. at 25).

A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts the governing law set forth in the Supreme Court's cases or (2) resolves a case differently from the Supreme Court on a set of materially indistinguishable facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). In either scenario, the state-court decision must be "substantially different," "diametrically

---

[2] Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Supreme Court has explained that there are two categories of *Brady* claims. The first is when "previously undisclosed evidence reveal[s] that the prosecution introduced trial testimony that it knew or should have known was perjured"; the second is when the prosecution fails to volunteer material, exculpatory evidence. *Id.*

different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court precedent. *Williams*, 529 U.S. at 405.

A state-court decision involves an "unreasonable application" of federal law if the state court identified the correct governing legal principle from the Supreme Court's decisions, but applied it in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409). The Supreme Court has cautioned that "[a]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 365. The state court's application of federal law must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 409, 410, 412); *see also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001); *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007) ("A decision can still be reasonable even if the reviewing court thinks it is wrong; 'unreasonable' here means something more than incorrect or erroneous."). It must be unreasonable, which is "'a substantially higher threshold' for obtaining relief than de novo review." *Renico*, 559 U.S. at 773 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). If it is "a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002).

### III.   Analysis

The initial question is whether the state court decided petitioner's claims on the merits, which affects the standard of review.[3] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim

---

[3] Because the Supreme Judicial Court denied petitioner's ALOFAR for further without comment, this Court must "look through" that decision to the last reasoned state-court decision, which is the opinion of the Massachusetts Appeals Court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  Like all presumptions, the presumption of a decision on the merits may be overcome, if "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.  The state court, however, need not issue an opinion explaining its reasoning, because "[the statute's] trigger for deferential review is adjudication, not explanation." *Clements v. Clarke*, 592 F.3d 45, 55 (1st Cir. 2010); *see also Richter*, 131 S. Ct. at 784 (advising that a state court need not explain its reasoning).

Here, the state court addressed on the merits the issue of whether non-disclosure of the 911 tape violated *Brady*.  Petitioner had plainly presented the issue in his motion for a new trial and on direct appeal.  The appeals court upheld the finding of the motion judge that the substance of the call was placed before the jury and held that admission of the tape itself would not have created a reasonable doubt.  *Montanez*, 81 Mass. App. Ct. 1103, at *2.  Both the motion judge and the appeals court cited to *Commonwealth v. Laguer*, 448 Mass. 585 (2007), a Supreme Judicial Court decision that discusses in depth the government's obligation to disclose material exculpatory evidence under *Brady* and *United States v. Agurs*, 427 U.S. 97 (1976), the clearly established Supreme Court precedent at issue here.  *See Laguer*, 448 Mass. at 593-601. Accordingly, the *Brady* issue will be granted deferential review.

In contrast, although petitioner phrased the cross-examination issue in constitutional terms, the state court's opinion neither cited state or federal cases, nor applied the appropriate standard without reference to caselaw.  Instead, it held that there was no abuse of discretion in the trial judge's limitation of cross-examination—a standard applied to appellate review of evidentiary rulings.

5

Under *Fortini v. Murphy*, 257 F.3d 39 (1st Cir. 2001), a claim is entitled to *de novo* review if the state court did not expressly and individually address it. The Supreme Court's later decisions in *Richter* and *Johnson v. Williams*, 133 S. Ct. 1088 (2013), could be read as setting a lower bar for what is considered a decision on the merits. In *Richter*, the Court found that the California Supreme Court's one-sentence summary order denying the petition was an adjudication on the merits because of the presumption that "the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S.Ct. at 784-85. In *Johnson*, the Court extended the presumption of a decision on the merits to state-court opinions that address some but not all of petitioner's claims. 133 S. Ct. at 1091. The First Circuit has not yet explicitly determined the effect of *Richter* and *Johnson* on *Fortini*. *See Jewett v. Brady*, 634 F.3d 67, 75 n.5 (1st Cir. 2011).

This Court will therefore presume that the state court decided petitioner's cross-examination claim on the merits, and will look to whether that presumption has been rebutted. Here, petitioner's Sixth Amendment challenge was neither fleeting nor insubstantial. *Johnson*, 133 S. Ct. at 1095. But the state court did not expressly and individually address petitioner's constitutional challenge. Nor did it acknowledge in any other way that it had considered and rejected the claim, such as by making a reference to a line of state cases that fully incorporated the federal constitutional right or squarely addressing overlapping state and federal claims. *Johnson*, 133 S. Ct. at 1094; *Hodge v. Mendonsa*, 739 F.3d 34, 41 (1st Cir. 2013) ("[A] state court may decide a federal constitutional claim 'by reference to state court decisions dealing with federal constitutional issues.'" (quoting *DiBenedetto v. Hall*, 272 F.3d 1, 6 (1st Cir.2001)); *see Lyons v. Brady*, 666 F.3d 51, 54 (1st Cir. 2012) (upholding denial of habeas relief where the

state-court decision had discussed petitioner's evidentiary challenge to the admission of photographs but addressed his due process challenge to that evidence merely by stating in the introductory paragraph that "there [was] no merit in [petitioner's] allegations of error"); *Cormier v. Saba*, 953 F. Supp. 2d 274, 283 (D. Mass. 2013) (denying habeas relief where state court had stated that petitioner "was not denied his fundamental right to confront and cross-examine the witnesses against him"). The state court did not even make a broad statement that all allegations of error lacked merit. *See Lyons*, 666 F.3d at 54. Instead, "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court." *Johnson*, 133 S. Ct. at 1097. Accordingly, because petitioner has sufficiently rebutted the presumption of a decision on the merits, he is entitled to *de novo* review of the cross-examination claim.

    A.    **Sixth Amendment Right to Cross-Examination**

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right to confront adverse witnesses, which includes the right to cross-examine them as to bias. *See Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Cross-examination may attempt to show "that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony" or it may "reveal[ ] possible biases, prejudices, or ulterior motives." *Davis*, 415 U.S. at 316. Nonetheless, a trial judge "retain[s] wide latitude" to impose reasonable limitations on cross-examination. *Van Arsdall*, 475 U.S. at 679. As set forth in *Van Arsdall*, a reviewing court must ask two questions: (1) whether the limitation prejudiced the examination of that particular witness; and (2) whether the error was harmless. *See DiBenedetto v. Hall*, 272 F.3d 1, 10 (1st Cir. 2001).

The first prong is determined by whether the jury would have received a "significantly

different impression" of the witness's credibility, absent the limitation. *DiBenedetto*, 272 F.3d at 10. Here, the trial judge cut off defense counsel's examination of Nichols as to his potential bias because the Commonwealth had not prosecuted him for possession of an unlicensed firearm—the same gun with which Nichols had confronted the burglar. But the trial court later told the attorneys that they could "talk some more about the business of [the gun] permit and discharge of the firearm in terms of not so much selective prosecution but possible bias." (S.A. 585). Neither attorney did so, but they were given the opportunity when there was still time to recall Nichols as a witness. Furthermore, defense counsel was allowed to present to the jury evidence that Nichols's gun was unregistered, through the testimony of two police officers. And in his closing argument, counsel pointed out that Nichols did not have a firearms license and that the jury "didn't hear anything about him being arrested and charged." (S.A. 797). Moreover, defense counsel did attempt to impeach Nichols' credibility through other means, by questioning his memory and perception. Given the fact that the jury was able to hear the facts of Nichols's potential bias, albeit not from his own words, it is highly unlikely that the jury would have come away with a significantly different impression of Nichols had defense counsel asked him directly on cross-examination.

As to the second prong, the test for harmless error is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relevant factors include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's

case." *Van Arsdall*, 475 U.S. at 684.  Nichols was the only eyewitness to the burglary, and therefore was a critical witness at the trial.  But as discussed, the jury was able to hear from other sources that he owned an unlicensed firearm and had not been prosecuted, and Nichols was cross-examined on other grounds.  All told, the trial judge's limitation of cross-examination appears harmless.

Accordingly, the constitutional cross-examination claim is without merit.

### B. Right to Exculpatory Information

The clearly established law governing the mandatory disclosure of exculpatory evidence is set forth in *Brady*, 373 U.S. at 87.  The three-part test for adjudicating *Brady* claims requires that: (1) the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the evidence was "suppressed by the State, either willfully or inadvertently;" and (3) prejudice ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The state court's decision focused on the third prong.  It noted that the substance of the 911 call and the "minor discrepancies" between Nichols' initial description and petitioner's appearance were presented to the jury.  *Montanez*, 81 Mass. App. Ct. 1103, at *2.  The court then concluded, "[i]t unlikely that admission of the audiotape itself would have 'create[d] a reasonable doubt which did not otherwise exist.'" *Id.* (quoting *Laguer*, 448 Mass. 585 at 594, and *Agurs*, 427 U.S. at 112).  In other words, the court found that no prejudice ensued, applying the proper constitutional standard.

This finding was not contrary to a Supreme Court precedent with materially indistinguishable facts, nor was it an unreasonable application of the law to the facts.  Petitioner was not able to play the 911 tape itself, but defense counsel did elicit from a police officer

9

Nichols's initial description of the intruder, which the jury was able to compare with Nichols' later description and petitioner's appearance at the show-up.

Accordingly, the claim based on the non-disclosure of the 911 tape is without merit.

## IV. <u>Conclusion</u>

For the foregoing reasons, the petition for habeas corpus is DENIED.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
Dated: March 10, 2014                       United States District Judge